EHP Land Co., Inc. v. Bosher, 2011 NCBC 5.

STATE OF NORTH CAROLINA

COUNTY OF PERQUIMANS

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
07 CVS 59

EHP LAND CO., INC.,              )
            Plaintiff    )
                       )
      v.                  )
                       )
VIRGINIA W. BOSHER, CHRISTINA   )
BOSHER HERZ, CAROLYN BOSHER    )
MALONEY, ROBERT M. BOSHER, JR.,  )
JENNIFER L. BOSHER, JOHN P. DOOLEY, )
MICHAEL C. DOOLEY, SARAH E. HERZ,  )
ANDREW T. HERZ, CHRISTINA P.     )
MALONEY, VIRGINIA M. MALONEY,    )
CLIFTON H. W. MALONEY, PHIL UPTON,  )
CINDY W. BOSHER, individually and in her )
capacity as Executrix of the Estate of Robert )
M. Bosher, ARTHUR R. ROBB, JR. AND  )
CHRISTINE BOSHER, as Co-Executors of  )
the Estate of RALPH G. BOSHER,     )
Deceased, and HPB ENTERPRISES, a    )
North Carolina General Partnership,     )
                Defendants   )

**AMENDMENT TO
OPINION AND ORDER
ON MOTION
FOR SUMMARY JUDGMENT**

THIS CAUSE, designated a mandatory complex business case by Order of the

Chief Justice of the North Carolina Supreme Court, dated April 10, 2007, pursuant to

N.C. Gen. Stat. § 7A-45.4(b) (hereinafter, references to the North Carolina General

Statutes will be to "G.S."); and assigned to the undersigned Chief Special Superior

Court Judge for Complex Business Cases, is before the court upon the Bosher

Defendants' Motion for Relief From Judgment or Order, or in the Alternative Motion to

Alter or Amend Judgment (the "Motion"), propounded under Rules 59(e) and 60(b),

North Carolina Rules of Civil Procedure ("Rule(s)"); and

THE COURT, after considering the arguments, briefs, affidavits, other submissions of counsel and appropriate matters of record, as discussed *infra*, CONCLUDES that the Defendants' Motion should be GRANTED in part and DENIED in part, as reflected in this Amendment to Opinion and Order.

*Ward & Smith, PA by A. Charles Ellis, Esq. and E. Bradley Evans, Esq. for Plaintiff EHP Land Co., Inc.*

*Graebe Hanna & Welborn, PLLC by Christopher T. Graebe, Esq. for Defendants Virginia W. Bosher, Robert M. Bosher, Jr., Jennifer L. Bosher, Phil Upton and Cindy W. Bosher, individually and in her capacity as Executrix of the Estate of Robert M. Bosher.*

*Poyner & Spruill, LLP by David Dreifus, Esq. and John W. O'Hale, Esq. for Defendants Christina Bosher Herz and Carolyn Bosher Maloney.*

*Christina P. Maloney, pro se.*

*Virginia M. Maloney, pro se.*

*Clifton H.W. Maloney, pro se.*

*John P. Dooley, pro se.*

*Michael C. Dooley, pro se.*

*Sarah E. Herz, pro se.*

*Andrew T. Herz, pro se.*

*Arthur R. Robb, Jr. and Christine Bosher, as Co-Executors of the Estate of Ralph G. Bosher, Deceased, pro se.*

*HPB Enterprises, a North Carolina General Partnership.*

Jolly, Judge.

### PROCEDURAL AND FACTUAL BACKGROUND

[1]     This civil action involves disputes between the parties arising from the acquisition, ownership and development of land in Perquimans County, North Carolina,

for a residential resort, golf and marina community known as Albemarle Plantation.  At times material, Albemarle Plantation was owned by Defendant HPB Enterprises, a North Carolina General Partnership ("HPB" or the "Partnership").  The following paragraphs briefly describe the undisputed factual and procedural background of this action.  For further details, see the court's Opinion and Order dated October 5, 2010 (the "October 5 Order") and its Opinion and Order dated February 24, 2011 (the "February 24 Order").

[2]     On or about July 22, 1987, Nathan S. Hurdle ("Hurdle"); EHP Land Co., Inc. ("EHP"); Ralph George Bosher ("Ralph Bosher") and Ralph Bosher's children, Robert M. Bosher ("Bo Bosher")[1], Virginia W. Bosher ("Ginny Bosher"), Carolyn Bosher Maloney ("Carolyn Bosher") and Christina Bosher Herz ("Christina Bosher"),[2] executed a written general partnership agreement (the "Partnership Agreement"), by which they (collectively, the "Partners") formed and intended to operate HPB as a North Carolina general partnership.

[3]     At the time of execution of the Partnership Agreement, the primary asset of the Partnership consisted of about 750 acres of undeveloped land in Perquimans County.  Over the years, HPB successfully developed Albemarle Plantation.

[4]     In 1991, Hurdle withdrew from HPB and his interest was divided among the remaining partners.  In May 2001, Ralph Bosher assigned his remaining ownership interest in HPB to his children and to some extended family members.

---

[1] Now deceased.  Cindy W. Bosher has been substituted as a representative party in her capacity as Executrix of the Estate of Bo Bosher. For purposes of this Opinion and Order, the Estate of Bo Bosher also will be referred to as "Bo Bosher."
[2] For purposes of the Motion, Bo Bosher, Ginny Bosher, Carolyn Bosher and Christina Bosher also may be referred to collectively as the "Bosher Partners."

[5]     In the late 1990s, EHP took over primary management of the Partnership, including the marketing and sale of Albemarle Plantation's lots, condominiums and single family homes.

[6]     On October 25, 2005, EHP gave HPB notice of its intent to withdraw from the Partnership, effective December 31, 2005.  At that time, EHP had a twenty-five (25) percent ownership interest in HPB.

[7]     By letter dated October 27, 2005, the Bosher Partners accepted EHP's withdrawal and elected to purchase EHP's Partnership interest and to continue the Partnership as a going concern.

[8]     Section 11 of the Partnership Agreement provides that "[i]f the remaining partners (or any of them) elect to purchase the withdrawing partner's interest, the value of the interest of a withdrawing partner shall be as stated in Section 13 herein and payment of the amount due to the withdrawing partner shall be made in cash in equal quarterly installments . . . with interest at the rate of 9% per annum on the unpaid balance."

[9]     With regard to the value of a withdrawing partner's interest, Section 13 of the Partnership Agreement ("Section 13") provides:

> 13.  Value of interest.  The value of the interest of a withdrawing partner shall be the book value thereof, as it appears upon the books and records of the partnership as of the close of business on the effective date of withdrawal, (with the date of such evaluation hereinafter referred to as "the effective date"), as adjusted by substituting the fair market value as of such date, in place of book value, of any inventory owned by the partnership.  Such book value, adjusted as herein provided, shall be computed by the certified public accountant regularly employed by the partnership, in accordance with the accounting practices regularly followed by the partnership, and in cases not

covered by such practices, in accordance with standard accounting practices. . . . Such book value shall include and reflect the *withdrawing* partner's capital account as at the end of the last accounting year as shown on the partnership books, increased by his or its share of partnership profits or decreased by his or its share of partnership losses for the period from the beginning of the accounting year in which the effective date occurs until the effective date, and increased by contributions and decreased by withdrawals during such period. In making the adjustment for the fair market value of inventory, the accountant shall rely on and use the written appraisal of an appraiser selected by the accountant for that purpose, with the approval of and at the expense of the partnership. A statement showing such book value, as thus adjusted . . . shall be completed by the accountant . . . . *Such book value, as adjusted, as set out in the accountant's statement, shall constitute and be deemed to be the purchase price for the entire partnership interest of the withdrawing partner, binding upon all parties hereto*, unless and until changed by written agreement of the parties.

(emphasis added).

[10]    In determining the value of EHP's interest in the Partnership at the time of withdrawal, EHP and the Bosher Partners disagreed with regard to the definition of "inventory" as reflected in Section 13.  As a result, on April 2, 2007, EHP filed its Complaint in this matter.[3]

[11]    With the exception of Defendants Ginny Bosher and Bo Bosher (the "Bosher Defendants" or "Defendants"), EHP settled its differences relative to this civil action with the remaining Bosher Partners.  Consequently, the two Bosher Defendants are the only remaining parties who have disputed issues with Plaintiff EHP, and their

---

[3] The Complaint alleges seven claims for relief ("Claim(s)"): First Claim for Relief (Breach of Contract – General Partnership Agreement); Second Claim for Relief (Dissolution – General Partnership Agreement); Third Claim for Relief (Dissolution – General Partnership Agreement);  Fourth Claim for Relief (Dissolution – North Carolina Uniform Partnership Act); Fifth Claim for Relief (Dissolution – General Partnership Agreement/Assignment); Sixth Claim for Relief (Breach of Contract – Phase II Contract) and Seventh Claim for Relief (Declaratory Judgment – N.C. Gen. Stat. § 1-253).

collective liability to EHP is one-half of such amount as ultimately is determined to represent the value of EHP's prior twenty-five (25) percent ownership in HPB.

[12]    The disagreement between EHP and the Bosher Defendants over the definition of "inventory" resulted in the court's October 5 Order, which determined the properties that constitute inventory for purposes of valuing EHP's interest at the time of withdrawal.

[13]    Subsequently, the parties also disagreed with regard to the methodology to be used in calculating the book value of EHP's interest in the Partnership at the time of withdrawal.  That disagreement resulted in the court's February 24 Order, in which the court concluded that the Bosher Defendants were indebted to EHP in the total amount of $2,758,294.08 for their purchase of EHP's interest in HPB.

## DISCUSSION

[14]    After entry of the February 24 Order, the Bosher Defendants filed the instant Motion.  In substance, the Motion contests (a) the initial "inventory" valuation opinion of F. Bruce Sauter ("Sauter"), the appraiser retained by the Partners to appraise the value of the Partnership's real property as of the date of EHP's withdrawal;[4] (b) the effective interest rate used by CPA J. Marion Crisp ("Crisp") in calculating the amount owned by the Bosher Defendants to EHP for purchase of EHP's interest in HPB and (c)

_____

[4] Pursuant to Section 13, the parties had engaged Sauter to appraise the value of the real property of the Partnership as of the effective date of EHP's withdrawal, which was December 31, 2005.  Sauter began the appraisal process in or about February 2006, but the dispute subsequently arose as to the definition of the term "inventory."  In that context, it was unclear what Sauter's appraisal duties were.  Thereafter, on or about March 30, 2006, EHP and the Bosher Defendants entered into a Forbearance Agreement ("Forebearance Agreement").  Pursuant to the Forbearance Agreement, EHP agreed to forbear from initiating legal action against the Bosher Defendants for a period of time in return for the Bosher Defendants' agreement to make certain quarterly payments to EHP.  The Forbearance Agreement also provided that EHP and the Bosher Defendants agreed to use Sauter as the appraiser and authorized him to provide separate appraisal reports for (a) the vacant lots in Phase I, (b) the undeveloped land referred to as Phase II and (c) the development amenities.  Paragraph 3 of the Forbearance Agreement provides that "Sauter's judgment as to the fair market value of the HPB Properties which are subsequently determined or agreed to be 'inventory' as of the Appraisal Date shall be binding on the parties."

the accounting methods and facts used by Art Robb ("Robb"), HPB's regularly employed accountant, in preparing a balance sheet (the "Statement") purporting to calculate the value of EHP's interest in HPB at the time of withdrawal. The Motion seeks vacation or amendment of the February 24 Order with regard to each of the foregoing three categories and a downward adjustment of the total amount owed by the Bosher Defendants to EHP.

[15]    Defendants ask the court for relief pursuant to Rule 60(b) and the inherent power of the court from the February 24 Order, contending that mistake, inadvertence, surprise, newly discovered evidence and/or other reasons caused the February 24 Order to be manifestly unjust and flawed.[5]  In the alternative, the Defendants seek an order pursuant to Rule 59(e) altering or amending the judgment due to irregularity, accident or surprise, newly discovered evidence, excessive damages, insufficiency of the evidence or other reasons that Defendants contend caused the February 24 Order to be manifestly unjust and flawed.[6]

[16]    Rule 60 provides that, for any reason justifying relief from the operation of judgment, a court may relieve a party from a final judgment or order.  Under North Carolina law, a trial court is free to set aside its own earlier judgment and may do so even on its own initiative. *See Barnes v. Taylor*, 148 N.C. App. 397, 400 (2002) ("[T]he trial court had authority to set aside its earlier judgment on its own initiative.").

<u>The Sauter Appraisal(s)</u>

[17]    Defendants dispute the accuracy of Sauter's appraisal of real estate inventory, upon which Robb relied in preparing his Statement and the court accepted in

---

[5] Defs. Mem. Supp. Mot. Amend 6.
[6] *Id.*

entering its February 24 Order. In support of their argument, Defendants present an affidavit from Sauter dated March 3, 2011 (the "Sauter Affidavit"). In the Sauter Affidavit, Sauter admits that he made an inadvertent error in his appraisal of the lots located in Phase I of Albemarle Plantation, which comprise some of the disputed properties in this matter.[7] Sauter explains that he intended to use a 5% per year appreciation rate for the interior lots of Phase I, and a 5% per quarter appreciation rate for the waterfront lots.[8]

[18] Defendants argue that the February 24 Order should be vacated or amended based on the Sauter Affidavit. They contend that Sauter's opinion of value as expressed in the Sauter Affidavit should be accepted by the court, and that the appraised value of EHP's interest in Phase I inventory should be reduced accordingly.

[19] In opposition, Plaintiff contends that under Rules 59 and 60 the Sauter Affidavit does not constitute newly discovered evidence[9] and that Defendants are not entitled to such relief. Plaintiff further argues that Sauter was pressured improperly by one of the Bosher Defendants to amend his initial appraisal and that the court therefore should disregard the Sauter Affidavit.

[20] The Forebearance Agreement clearly contemplated and specifically provided that Sauter's opinion as to value would be accepted as binding by all concerned. Here, Sauter has admitted to having made a mistake in his appraisal of the inventory at issue. However, it is undisputed that the mistake resulted from a

---

[7] Sauter Aff.

[8] *Id.* Sauter states that he "recalculated the value of the Phase I lots after correcting the appreciation rate to 5% per year on the interior lots," instead of the 5% per quarter rate that he had used, and that the effect of such "recalculation and correction of the error is a reduction in the appraised value of Phase I as of December 31, 2005 by $1,898,600."

[9] Pl. Mem. Opp. Mot. Amend 8.

mechanical error and does not reflect a change in Sauter's subjective opinion of value. Accordingly, the court concludes that Sauter's amended opinion is appropriate and is binding on the respective parties.

[21] The court has discretion to grant relief from a judgment or order where the judgment is based on a mistake. The February 24 Order was based on an inadvertent appraisal error by Sauter in calculating the appreciation rate for the interior lots in Phase I, and there is no probative evidence before the court that improper influence by one of the Bosher Defendants was a material cause of Sauter's amending his appraisal. The court CONCLUDES that the ends of justice require that the corrected appreciation rate as reflected in the Sauter Affidavit should be used to calculate the amount owed to Plaintiff by Defendants. The February 24 Order should be amended accordingly.

The Crisp Interest Rate Calculation

[22] Defendants also argue that the amount owed by them to EHP was not calculated by Crisp using the simple interest rate specified in the Partnership Agreement. Defendants show that the Partnership Agreement called for quarterly payments by the remaining partners to a withdrawing partner, with interest of "9% per annum" to be paid on the amount owed.[10] They concede that the February 24 Order, which was based upon calculations by Crisp,[11] awarded interest at 9%. However, they complain that Crisp compounded interest quarterly rather than annually, resulting in an effective interest rate of 9.308% per annum. Defendants argue that the February 24 Order should be vacated or amended because of the improper interest rate inadvertently having been used by Crisp and adopted by the court.

---

[10] Defs. Mem. Supp. Mot. Amend 13.
[11] *See* Nov. 10, 2010 Crisp Aff.

[23]   In opposition, Plaintiff argues that Defendants' failure to raise the issue of the incorrect interest rate prior to the February 24 Order precludes Defendants from raising the issue now.

[24]   The Partnership Agreement calls for interest-bearing quarterly payments but not quarterly compounding of interest.  It is undisputed that the quarterly compounding of the 9% annual interest rate by Crisp was a mistake, and the court accepts Defendants' argument that interest should have been calculated by Crisp using a 9% per annum rate.  The court has discretion to grant relief from a judgment or order where the judgment is based on a mistake.  Since the February 24 Order was based on an inadvertent error by Crisp in calculating the interest rate on payments owed by Defendants to EHP, the court CONCLUDES that the ends of justice require that an annual interest rate of 9% should be applied to any such payments.  The February 24 Order should be amended accordingly.

The Robb Statement of EHP Value

[25]   Lastly, Defendants argue that Robb did not properly calculate the actual amount owed to Plaintiff upon the Plaintiff's withdrawal from the Partnership as contemplated by Section 13 of the Partnership Agreement.  Defendants present several contentions with regard to the Robb Statement.  They argue that:

(a)   At the end of year 2005, EHP's capital account was less than 25% of the total of HPB capital accounts because EHP had taken disproportionately large distributions during 2005.[12]  That resulted in EHP's capital account only being about 23% of the total, somewhat less than EHP's 25% ownership

---

[12] Defs. Mem. Supp. Mot. Amend 11.

percentage in HPB.[13]  Defendants contend that Robb should have calculated the value of EHP's interest, and adjusted it downward, based on EHP's capital account at the end of 2005 and the distributions EHP already had taken in the year of withdrawal.

(b)     The Robb Statement improperly accounts for certain intra-company receivables, and that such accounting practice was not regularly followed by the Partnership.  They argue that EHP's interest should be further adjusted downward as a result.

[26]    Plaintiff disputes Defendants' arguments as to the accounting methods reflected in the Robb Statement.  It argues that it is undisputed that Robb was the certified public accountant regularly employed by the Partnership at times material, and that his testimony is clear that he calculated the value of EHP's withdrawal interest consistently with the requirements of Section 13.  Plaintiff further argues that Robb was deposed early in this litigation by Defendants, that they previously did not inquire as to his methodologies in preparing his Statement and that it is too late to do so after the court has entered summary judgment in the matter.

[27]    Plaintiff further points out that Section 13 clearly reflects the agreement of the parties that the book value of a withdrawing Partners' share, as determined by the "regularly employed accountant . . . shall constitute and be deemed to be the purchase price for the entire partnership interest of the withdrawing partner, binding upon all parties hereto, unless and until changed by written agreement of the parties."

[28]    Both Plaintiff and Defendants have propounded multiple affidavits, from Robb and others, with regard to Robb's Statement.  In a somewhat unusual proceeding,

---

[13] *Id.*

but in order to clarify the various affidavits, the court *ex mero motu* sought Robb's live testimony. That testimony was taken in open court on May 5, 2011, and all interested parties had opportunity to question Robb.

[29] A fair reading of the evidence presented by the parties on this issue leads the court to conclude that the accounting methods and practices employed from time to time by the Partnership may have been somewhat loose as between the respective Partners. However, Robb's affidavit and live testimony is to the effect that his Statement was calculated based upon the accounting practices regularly followed by the Partnership, and in cases not covered by such practices, in accordance with standard accounting practices.

[30] Defendants have attacked Robb's methodologies and have argued that Robb is in league with Plaintiff. They contend that his Statement is slanted intentionally in Plaintiff's favor, and they have made repeated efforts to color it as flawed[14] and inconsistent with the requirements of Section 13. Notwithstanding the competing affidavits and the vigorous examination of Robb in his live testimony, the court is forced to conclude that Defendants have not produced credible evidence either of improper bias on Robb's part or that his Statement was prepared in a manner materially inconsistent with the requirements of Section 13. Accordingly, the court concludes that there exist no genuine issues of material fact with regard to the Robb Statement and, as clearly agreed in Section 13, the Defendants are bound by Robb's calculations in the Statement.

---

[14] Defendants do not contend that any errors in the Sauter appraisal or the Crisp interest calculation were caused by or attributable to Robb.

## CONCLUSION

[31]     Based upon the foregoing, the court CONCLUDES that:

(a)     There exist no genuine issues of material fact with regard to the Sauter appraisal, and the court's February 24 Order should be amended to reflect the corrected appreciation rate as stated in the Sauter Affidavit and as used in the Robb Statement to calculate the amount owed to Plaintiff by Defendants.  With regard to the Sauter appraisal, the Defendants' Motion should be GRANTED.

(b)     There exist no genuine issues of material fact with regard to the Crisp interest rate calculation, and the court's February 24 Order should be amended to reflect that the interest rate applied to any unpaid amounts owed to Plaintiff by Defendants is 9% per annum.  With regard to the Crisp interest rate calculation, the Defendants' Motion should be GRANTED.

(c)     As adjusted by the corrected Sauter appraisal there exist no genuine issues of material fact with regard to the Robb Statement, and Defendants are bound by the Statement in calculating the amount owed by Defendants for Plaintiff's interest in the Partnership.  Consequently, with regard to Robb's Statement of the value of Plaintiff's book value interest in the Partnership, Defendants' Motion should be DENIED.

NOW THEREFORE, based upon the foregoing CONCLUSIONS, in the discretion of the court and in furtherance of the ends of justice, it is ORDERED, ADJUDGED and DECREED that the court's February 24 Order hereby is AMENDED, as follows:

[32]     Paragraphs 82 and 84 of the February 24 Order are VACATED and

WITHDRAWN, and are replaced by new Paragraphs 82, 84 and 85, which shall read as

follows:

[82]     As of December 31, 2005, the total value of EHP's interest in HPB was $ 6,336,956.  The Bosher Defendants were indebted to Plaintiff for one-half of said total value, that being the amount of $3,168,478.  The Bosher Defendants' obligation is not joint and several.  Consequently, each of the Bosher Defendants was indebted to EHP for one-half of said amount, for a principal indebtedness to EHP by each Bosher Defendant in the amount of $1,584,239 as of December 31, 2005.  Upon entry of judgment in this matter, each of the Bosher Defendants shall be credited for any payments made against said indebtedness since December 31, 2005, and interest upon any unpaid balances of said indebtedness shall be calculated at the rate of 9% per annum.

[84]     On or before June 6, 2011, Plaintiff and the Bosher Defendants shall file with the court a statement of their respective contentions in this matter with regard to the unpaid amount they each contend is owed to EHP by each of the Bosher Defendants, as of June 7, 2011.  Said statement shall calculate such indebtedness in a manner consistent with the rulings contained in this Opinion and Order.  By submitting such a statement, neither Plaintiff or Defendants shall be deemed to have waived their respective rights to object or except to the rulings in this Opinion and Order or any other rulings by the court during the course of this matter.

[85]     On June 7, 2011, at 2:00 p.m., the court will conduct a telephonic hearing and status conference with all remaining parties to this action for the purpose of determining any then-remaining issues between the parties, including but not limited to (a) the exact dollar amount that each of the Bosher Defendants owes EHP and (b) further duties of the court-appointed HPB Manager.  Thereafter, the court anticipates entering a final judgment relative to this matter.

[33]     Except as specifically GRANTED herein, Defendants' Motion is DENIED.

This the 25th day of May, 2011.